Mary C. Geddes
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>RED TIGER CHASE,<br><br>　　　　　　　Defendant. | Case No. A05-0036 CR (JWS)<br><br>**DEFENDANT'S OPPOSITION TO MOTION TO REQUIRE DEFENDANT TO EXECUTE AUTHORIZATION TO RELEASE CONFIDENTIAL INFORMATION** |

　　　　　This court should deny the government's motion at docket 42 to require Red Tiger Chase "to execute a medical waiver as a condition of probation."

<u>Introduction</u>

　　　　　Red Tiger Chase was sentenced by this court on Friday, October 14, 2005, for three acts of social security fraud in 2000 and January 2001.[1]  The parties recommended and the court imposed a wholly probationary sentence.

---

[1] The offense is a felony, punishable by a maximum of 5 years.  42 U.S.C. § 408(a)(7)(B).

Mr. Chase's offense conduct was significant for its mitigated nature. In 1997 or 1998, Mr. Chase created a false social security number to go with an invented identity of "Christian Holy Saints Paul." Mr. Chase created this identity because he desperately hoped to return to military service through this means. Mr. Chase, who had a history of distinguished military service, had separated from the United States Army in the mid-1990s after a debilitating period of then-severe paranoid schizophrenia.

Mr. Chase eventually abandoned his plan to re-enlist, but twice in 2000, as "Christian Holy Saints Paul," he received mail solicitations from Sadler's for loans to purchase furniture. Mr. Chase responded to the solicitations. He received a loan from Wells Fargo in the amount of $789.11 in January 2000, and a second loan of $501.24 in December 2000. In January 2001, Mr. Chase also responded to an offer to consolidate his two loans, thus effectively obtaining a third loan. At no time was Mr. Chase attempting to steal someone's identity, nor to utilize their credit history. His fraudulent use of a social security number – limited to a few occasions – ended nearly five years ago, and he subsequently destroyed his false identification through which he had obtained the loans. PSR, ¶ 25.

Significant for an evaluation of Mr. Chase's potential for rehabilitation were his uncounseled and genuine expressions of dismay when he learned his loan to Wells Fargo had not been fully repaid and that the number he had "invented" was assigned to someone.[2] Mr. Chase was reportedly angry at the bank for not pursuing a missing payment, as he would have gladly paid.[3]

---

[2]   The person to whom the social security number belongs did not suffer any credit problems as a result of Mr. Chase's limited use of the number in 2000.

[3]   PSR, ¶ 21.

Mr. Chase's post-charge/pre-sentencing conduct was also significant for his rehabilitative potential. He was fully compliant with all conditions of pretrial release. Even prior to entering a guilty plea, Mr. Chase sold all of his firearms in anticipation of his conviction and the prohibition on his future possession of weapons. He has entered into an agreement which requires repayment of the loan balance to Wells Fargo, even though they are not a true "victim" of the offense of conviction. Also significant to the court was the information that Mr. Chase was continuing to participate in out-patient mental health treatment through the Veterans' Administration.

<u>The Probation Condition and the Release Provided to Probation</u>

As a condition of probation, this court required Mr. Chase to continue in mental health treatment with the Veterans' Administration. Shortly after Mr. Chase was sentenced, his newly-assigned Probation Officer, Michael Pentangelo, met with Mr. Chase, Federal Public Defender Rich Curtner, and Assistant Federal Public Defender Kevin McCoy. (Assistant Federal Public Defender Mary Geddes was out sick.) In this meeting, Mr. Pentangelo sought a blanket waiver of confidentiality from Mr. Chase for his medical and mental health records with the Veterans' Administration. Mr. Chase's attorneys instead proposed – and later provided – a release more tailored to the court's conditions of probation. That signed release, along with a letter from Mr. Chase's attorney, was sent to Probation Officer Pentangelo on October 27, 2005. That letter read, in its entirety:

Dear Mike:

Here is the release I prepared for Red Tiger Chase with the Veterans' Administration. The release authorizes you to contact the VA mental health representative and to verify that he is compliant with the treatment prescribed. The release also directs the VA to notify you if he is discharged from treatment or if he stops treatment against medical advice.

> Because I was out sick and not present at your initial meeting with Mr. Chase, I understood you had some concerns with our preparation of a release. If you are not been [sic] satisfied with this release, please let me know right away.
>
> /s/ Mary Geddes

The undersigned has not been contacted by Mr. Pentangelo since this letter was sent, months ago, so she is unaware of any problem arising since Mr. Chase began probation four months ago.[4]

This Court Should Decline to Order Mr. Chase To Waive
the Psychotherapist-Patient Privilege and Fifth Amendment Rights

The government's application – filed at the behest of Mr. Pentangelo, but unsupported by any affidavit – asserts that the lawyer-prepared release signed by Mr. Chase is "inadequate" because it "only" allows probation to confirm that Mr. Chase is following treatment or has been terminated from treatment. The limited release executed by Mr. Chase (attached to the government's motion) is sufficient in this case for probation supervision purposes, and Mr. Pentangelo has identified no reason for why he now requires unrestricted access to Mr. Chase's medical records at the Veterans Administration, which presumably span more fifteen years.[5]

The issue before this court is whether Mr. Chase could, or should, be required by this court to waive medical confidentiality and patient-psychiatrist or patient-psychotherapist privilege and Fifth Amendment privilege against self-incrimination in the context of his participation in mental health treatment.

---

[4] If there has been any problem implementing the release provided, Mr. Chase certainly will assist in resolving the problem.

[5] Indeed, Mr. Chase's treating psychiatrist, Dr. Janet DiPreta, wrote a letter to the court in early October 2005. Dr. DiPreta reported that Mr. Chase's mental status and functioning in the community had dramatically improved over the past five years, and characterized him as a "law-abiding" citizen who is productive.

In this memorandum Mr. Chase submits that:

- he has a right of confidentiality in his medical records and in a patient-psychiatrist therapeutic relationship;

- he has a Fifth Amendment right not to be compelled to disclose information during the course of court-ordered mental health treatment that would subject him to potential criminal prosecution;

- mental health treatment can be effective and meaningful only if his patient-psychotherapist privilege and Fifth Amendment privilege are honored by this court and the probation office;

- this court should not require that Mr. Chase give up his privileges in order to receive mental health treatment.

Mr. Chase has a reasonable expectation of privilege with his doctors, psychologists, and therapists. The *Ethical Standards and Code of Conduct* of the American Psychological Association are clear. The APA Ethical Standards require that a treating psychologist <u>not</u> disclose confidential information gathered in the course of providing treatment without the patient's consent, except where mandated by law. *See* APA Ethical Standards 5.01 through 5.05.

The State of Alaska has approved the patient-psychotherapist privilege by statute in adopting the APA *Ethical Standards and Code of Conduct.* Alaska Stat. § 08.86.080 and 12 A.A.C. 60.185. Those exceptions, "where mandated by law," are limited in Alaska to:

1. Immediate threat of serious physical harm to an identifiable person, when that threat is communicated to the psychologist. *See* Alaska Stat. § 08.86.200(a)(3).

2. Evidence of past child abuse or neglect, or the abuse of elderly or disabled adults. *See* Alaska Stat. § 47.17.020 and Alaska Stat. § 47.24.019; *Child Abuse Prevention and Treatment and Adoption Reform*, 42 U.S.C. § 5101 *et seq.*

3. Evidence of future crimes, planned by a patient and communicated to the psychologist.

The State of Alaska has consistently recognized the existence of the patient-psychotherapist privilege except where the privilege is specifically abrogated by statute. *E.g.*, *Walstad v. State*, 818 P.2d 695 (Alaska App. 1991).

The patient-psychotherapist privilege was recently recognized as a matter of federal common law by the United States Supreme Court in *Jaffee v. Redmond*, 518 U.S. 1 (1996). In *Jaffee*, the Supreme Court held "that confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure." 518 U.S. at 15. *See also In Re Grand Jury Proceedings*, 183 F.3d 71, 73 (1st Cir. 1999).

*Jaffe* states that the privilege exits for communications made (1) confidentially, (2) between a licensed psychotherapist and her patient, and (3) in the course of diagnosis or treatment. 518 U.S. at 15. All three of those requirements would apply to communications made by Mr. Chase in mental health assessment or treatment as required as a condition of supervised release.

Furthermore, Mr. Chase has a Fifth Amendment right against self-incrimination. In *Minnesota v. Murphy*, 465. U.S. 420 (1984), the United States Supreme Court recognized that the Fifth Amendment privileges a person "not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future

6

criminal proceedings." 465 U.S. 426, *quoting Lefkowitz v. Turley*, 414 U.S. 70, 77 (1973). The Supreme Court went on to hold that, "A Defendant does not lose this protection by reason of his conviction of a crime" and probationer retains a Fifth Amendment right against self-incrimination in dealing with his probation officer. 465 U.S. at 426.

Mr. Chase retains a Fifth Amendment privilege while on supervision. This right exists whether Mr. Chase is dealing directly with his probation officer or through a mental health therapist not subject to the patient-psychotherapist privilege.

*Minnesota v. Murphy* also recognizes that, while a probationer retains a Fifth Amendment privilege, the privilege is not self-executing. A probationer who does not assert the privilege while consulting with his or her probation officer can be deemed to waive the privilege. Thus, Mr. Chase must be able to depend on the confidentiality of mental health treatment without jeopardizing his Fifth Amendment protection.

This court can look to guidance on the issue from Alaska state law. In *State v. R.H. and Mitchell Wetherhorn*, 683 P.2d 269 (Alaska App. 1984), the Alaska Court of Appeals upheld the patient-psychotherapist privilege and the privilege against self-incrimination in quashing a subpoena for disclosure of confidential communications resulting from therapy. *See also M.R.S. v. State*, 897 P.2d 63 (Alaska 1995).

As the court stated in *R.H.*, the average person facing an eight-year presumptive term will not seek treatment if he knows a psychotherapist will testify against him in a criminal trial. Likewise, Mr. Chase must certainly assert his Fifth Amendment privilege in treatment unless confidentiality with his therapist can be assured.

The United States Supreme Court in *Jaffe* cogently set out the purpose of the patient-psychotherapist privilege:

> Effective psychotherapy depends upon an atmosphere of confidence and trust in which the patient is willing to make a frank and complete disclosure of facts, emotions, memories and fears. Because of the sensitive nature of the problems for which individuals consult psychotherapists, disclosure of confidential communications made during counseling sessions may cause embarrassment or disgrace. For this reason, the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment.

518 U.S. at 10.

In another Alaska District Court case in which this same issue was confronted – and in which the district court ultimately refused to order the defendant to execute a waiver – Drs. James Harper and Aron Wolf submitted affidavits for the court that illustrate the importance of confidentiality in a therapeutic relationship. *USA v. James Call*, A99-0130 CR (JKS), Exhibits D and E. As their affidavits attested, psychotherapy can only be effective if confidentiality in the therapeutic relationship is maintained.

In this case, the court should not require waiver of the patient-therapist and Fifth Amendment privileges. While Mr. Chase had not contested the court's authority to order his continued participation in VA mental health treatment as a probation condition, it should also instruct the probation office that a patient-psychotherapist privilege applies to that treatment, except where that privilege has been abrogated by the state or federal statute. The release executed by Mr. Chase provides a sufficient means by which Probation can ensure his compliance with the court's probation condition.

///

///

DATED this 14th day of February, 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
DISTRICT OF ALASKA

/s/ Mary C. Geddes
Assistant Federal Defender
Alaska Bar No. 8511157
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Ph: (907) 646-3400
Fax: (907) 646-3480
mary_geddes@fd.org

Certification:

I certify that on February 14, 2006, a copy of the foregoing document was served electronically on:

Karen L. Loeffler, Esq.

/s/ Mary C. Geddes